# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   WILLIAM FRANCIS KALINOWSKI and               No. 7-09-12233 SS
         ANDREA JANE KALINOWSKI

         Debtors.


In re:   STEPHEN JOHN KALINOWSKI and                  No. 7-09-12234 JA
         KAREN DIETER KALINOWSKI,

         Debtors.

---

HAWKS HOLDINGS, LLC, a
Nebraska limited liability company,

         Plaintiff,

v.                                                    Adversary No. 09-1123J consolidated with
                                                     Adversary No. 09-1131 S
STEPHEN JOHN KALINOWSKI and
KAREN DIETER KALINOWSKI

and

WILLIAM FRANCIS KALINOWSKI,

         Defendants.


## MEMORANDUM OPINION

THE MATTERS before the Court are cross-motions for partial summary judgment filed

in Adversary Proceeding No. 09-1131 and cross-motions for partial summary judgment filed in

Adversary Proceeding No. 09-1123.[1]  Adversary Proceeding No. 09-1131 has been consolidated

---

[1] *See* Plaintiff's Motion for Partial Summary Judgment (Adv. Proc. No. 09-1131; Docket No. 38)(as to William
Kalinowski); Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary
Judgment (Adv. Proc. 09-1131; Docket No. 39)(as to William Kalinowski); Defendant's Response to Plaintiff's
Motion for Partial Summary Judgment & Defendant's Counter Motion for Partial Summary Judgment (Adv. Proc.
No. 09-1131; Docket No. 46)(as to William Kalinowski); Defendant's Memorandum of Points and Authorities in
Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and in Support of
Defendant's Counter-Motion for Partial Summary Judgment (Adv. Proc. No. 09-1131, Docket No. 45)(as to William
Kalinowski); Plaintiff's Motion for Partial Summary Judgment (Adv. Proc. No. 09-1123; Docket No. 26)(as to
Karen Kalinowski); Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary

with Adversary Proceeding No. 09-1123J for all purposes.  Plaintiff, Hawks Holdings, LLC, a Nebraska limited liability company ("Hawks Holdings") requests the Court to grant partial summary judgment in the amount of $978,696.22 on its claims for non-dischargeability against Defendant William Francis Kalinowski and against Defendant Karen Dieter Kalinowski based on an alleged defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).  Defendants William Kalinowski and Karen Kalinowski also request summary judgment on Plaintiff's non-dischargeability claims against them under 11 U.S.C. § 523(a)(4).

After the parties had fully briefed their motions, the Court requested the parties to submit the following additional limited information: 1) whether Defendant Karen Kalinowski was the sole manager of K2 Construction Company, LLC;  2) identification of all membership interests of the members of K2 Construction Company, LLC; and 3) a copy of the Operating Agreement for K2 Construction Company, LLC.   The parties filed Stipulations Concerning Additional Information Requested by the Court ("Stipulations") regarding items 2) and 3) and separately responded to item 1).  *See* Docket Nos. 45, 46, and 47.   As part of her response, Defendant Karen Kalinowski filed a supplemental affidavit.  *See* Supplemental Affidavit of Karen Dieter Kalinowski in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment ("Supplemental Affidavit of Karen Kalinowski").  Docket No. 46.

The parties' dispute arises out of a construction contract between Hawks Holdings and K2 Construction Company, LLC ("K2 Construction") for the construction of residences on three lots located in Las Campanas near Santa Fe, New Mexico.  Hawks Holdings asserts that K2

---

Judgment (Adv. No. 09-1123; Docket.27)(as to Karen Kalinowski); Defendant's Response to Plaintiff's Motion for Partial Summary judgment & Defendant's Counter Motion for Summary Judgment (Adv. Proc. No. 09-1123; Docket No. 32)(as to Karen Kalinowski); Defendant's Memorandum of Points and Authorities in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment  & Defendant's Counter Motion for Partial Summary Judgment (Adv. Proc. No. 09-1123; Docket No. 33 and Docket No. 35)(as to Karen Kalinowski);

Construction failed to comply with Section 60-13-23.1(F) NMSA 1978 (2004 Repl. Pamp.) of the New Mexico Construction Industries Licensing Act by diverting to other projects or otherwise converting funds paid by Hawks Holding to K2 Construction for the purpose of completing construction of the three residences, that such failure constitutes fraud or defalcation while acting within a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4), and that K2 Construction's breach of its fiduciary duty is attributable to conduct on the part of Karen Kalinowski and William Kalinowski such that the debt at issue is non-dischargeable in their individual bankruptcy cases.[2] Karen Kalinowski and William Kalinowski assert that because neither of them was the qualifying party for nor the licensee of any license issued to K2 Construction pursuant to the New Mexico Construction Industries Licensing Act, the New Mexico statute at issue cannot impose upon them a fiduciary duty of the type required to sustain a non-dischargeability action under 11 U.S.C. § 523(a)(4).

After consideration of the motions, supporting memoranda, responses and replies, and being otherwise sufficiently informed, the Court finds that both Defendant Karen Kalinowski and Defendant William Francis Kalinowski acted in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4). The Court further finds that the facts not in genuine dispute regarding defalcation while Defendants were acting in a fiduciary capacity are sufficient to shift the burden of going forward to Defendants to render an accounting of the use and disposition of funds Hawks Holdings paid to K2 Construction for the Project. Consequently, the Court will grant, in part, Plaintiff's motion for partial summary judgment on the issue of whether Defendants were acting in a fiduciary capacity, and deny Defendants' motion for summary judgment.

SUMMARY JUDGMENT STANDARDS

---

[2]Hawks Holdings has asserted other claims of non-dischargeability under 11 U.S.C. § 523 in this adversary proceeding that are not at issue in the cross motions for summary judgment.

The Court should grant summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.  In considering a motion for summary judgment, the Court must "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Wolf v. Prudential Inc. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990)).  Cross motions for summary judgment raise an inference that summary judgment may be appropriate.  *Crossingham Trust v. Baines (In re Baines),* 337 B.R. 392 , 396 (Bankr.D.N.M. 2006). Nevertheless, before a Court may grant summary judgment, the Court must satisfy itself that the requesting party has independently satisfied the requirements of Rule 56(c).  *See Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 998 (10th Cir. BAP 1997); *see also, Renfro v. City of Emporia,* 948 F.2d 1529, 1534 (10th Cir. 1991)(stating that a cross motion for summary judgment does not relieve the court of its obligation to determine if a genuine issue of material fact exists).  "[A] party opposing a properly supported motion for summary judgment 'may not rest on mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial'" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Rule 56(e), Fed.R.Civ.P.).

## FACTS NOT IN GENUINE DISPUTE

Hawks Holding filed separate motions for summary judgment against Karen Kalinowski and William Kalinowski with respect to its non-dischargeability claims under 11 U.S.C. §

523(a)(4) based on alleged defalcation while acting in a fiduciary capacity. Karen Kalinowski and William Kalinowski each filed a separate cross-motion for summary judgment in their favor on those claims. For purposes of setting forth the facts in this Memorandum Opinion that are not in genuine dispute, if a fact is not in genuine dispute as to only one of the Defendants the Court will so indicate.

The following facts are not in genuine dispute:

1. Hawks Holdings is a limited liability company organized and existing under the laws of the state of Nebraska.

2. K2 Construction is a limited liability company organized in 2007 under the laws of the State of New Mexico.

3. K2 Construction is a licensee of a general contractor's license issued to it pursuant to the New Mexico Construction Industries Licensing Act.

4. Neither Karen Kalinowski nor William Kalinowski was the qualifying party for nor licensee of any license issued to K2 Construction pursuant to the New Mexico Construction Industries Licensing Act.

5. Stephen John Kalinowski and Karen Dieter Kalinowski are husband and wife. (Not in genuine dispute as to Karen Kalinowski only).

6. Karen Kalinowski is William Kalinowski's sister in law.

7. William Kalinowski's nickname is "Kal." K2 stands for Karen and Kal.

8. Karen Kalinowski owns 51% of the membership interests in K2 Construction.

9. The remaining members of K2 Construction and their ownership interests are as follows: KIK Irrevocable Trust of 2007 - 19%; Chris Ribas – 30%. *See* Stipulations (Docket No. 45).

10. The Operating Agreement of K2 Construction, dated March 13, 2007, includes the following provisions:

> Section 6.  Quorum  At least 51% of the ownership interest of the Company . . . shall constitute a quorum at a meeting of members. . . . . No business may be transacted at a members meeting if there is not a quorum present.  No action of the members is valid unless 51% of the ownership interest votes in favor of the proposed action.
>
> General Powers.  The business affairs of the Company shall be managed by its Managers, as further set forth in the Regulations of the Company.
>
> *See* Stipulations (Docket No. 45)

11. The Regulations of K2 Construction Company, LLC, include the following provisions:

> 3.1  Management.  The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under, its designated Manager or Managers. . . .
>
> 3.2  Number and Qualification.  The number of Managers of the Company shall be two (2) or more, as may be determined by the Members from time to time, but no decrease in the number of Managers shall have the effect of shortening the term of any incumbent Manager.
>
> *See* Supplemental Affidavit of Karen Kalinowski (Docket No. 46).

12.  The Minutes of the Organizational Meeting K2 Construction Company, LLC ("Organizational Minutes"), dated March 13, 2007 includes the following provision regarding the nomination and election of managers of K2 Construction:

> After discussion, and motion duly made, seconded, and passed, the Members agreed that the Company should have one manager, Karen D. Kalinowski. Although the Members reserved the right to elect officers no officers were elected.
>
> *See* Plaintiff's Separate Response to Court's Request for Additional Information concerning the managing Member(s) of K2 Construction Company, LLC ("Plaintiff's Separate Response"), Exhibit C. (Docket No. 47).

13.  The Organizational Minutes include the following resolution regarding banking:

> . . . that William F. Kalinowski, Karen D. Kalinowski, and any other
> person authorized by the Members and certified to the Bank is authorized
> on behalf of this Company and in its name, to sign checks, drafts, notes,
> bills of exchange, acceptances, or other orders for payment of money from
> said account, to endorse checks, notes . . .

> *Id.*

14. At all material times, Karen Kalinowski was the sole manager of K2 Construction designated by its members.

15. William Kalinowski does not have an ownership interest in K2 Construction, is not a member of K2 Construction, and is not an officer, director, or manager of K2 Construction appointed or designated by its members.

16. William Kalinowski was significantly involved in the management of the day-to-day affairs of K2 Construction.

17. In 2008, Hawks Holding and K2 Construction entered into a construction contract ("Contract") for the construction by K2 Construction of residences to be located on Lot 99, 102, and 103 in Park Estates, Las Campanas, Santa Fe, New Mexico ("Property") owned by Hawks Holding (the construction project contemplated by the Contract hereafter is called the "Project").

18. The total contract price under the Contract was $3,639,436.00.

19. William Kalinowski negotiated the Contract on behalf of K2 Construction.

20. In negotiating the Contract, William Kalinowski represented to representatives of Hawks Holdings that he was personally responsible for getting the projects built and paid for through K2 Construction. (Not in genuine dispute as to William Kalinowski only).

21. Karen Kalinowski signed the Contract on behalf of K2 Construction, as its "manager."

22. Karen Kalinowski and William Kalinowski have described themselves as co-owners and partners in several construction and development companies.

-7-

23. Karen Kalinowski and William Kalinowski consulted with each other and made decisions together when it came to the management and operation of their various construction and development companies, including K2 Construction.

24. Karen Kalinowski and William Kalinowski were both involved in the financial discussions and financial decisions affecting K2 Construction.

25. William Kalinowski represented to others that he "controlled and managed" an entity called Barranca Builders, LLC and K2 Construction. (Not in genuine dispute as to William Kalinowski only).

26. Some of the funds paid by Hawks Holdings to K2 Construction were "pooled" into a single account with funds from the other construction and development companies operated and managed by Karen Kalinowski and William Kalinowski. The pooled account was in the name of an entity other than K2 Construction.

27. William Kalinowski and Karen Kalinowski were aware that funds Hawks Holding paid to K2 Construction were routinely transferred from K2 Construction to the pooled account.

28. William Kalinowski participated in decisions to transfer K2 Construction funds to the pooled account. (Not in genuine dispute as to William Kalinowski only).

29. William Kalinowski was directly and actively involved in making the decisions on behalf of K2 Construction regarding which of K2 Construction's subcontractors and suppliers would be paid on the Project.[3]

---

[3] Defendant's Memorandum of Points and Authorities in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's [William Kalinowski's] Counter Motion for Partial Summary Judgment ("Defendant William Kalinowski's Memorandum") states that William Kalinowski disputes this fact. *See* Defendant's Memorandum, p.3, ¶ 18 (Adv. No. 09-1131, Docket No. 45). However, nothing in the Affidavit of William Francis Kalinowski in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment ("Affidavit of William Kalinowski") attached as Exhibit 1 to Defendant William Kalinowski's Memorandum addresses this fact. *See* Adv. No. 09-1131; Docket No. 45. To the contrary, Defendant William Francis Kalinowski's Responses to Plaintiff['s] Requests for Admissions, attached as Exhibit E to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment (Adv. No.

30. Karen Kalinowski generally deferred to such decisions made by William Kalinowski on behalf of K2 Construction.

31. Karen Kalinowski was the only person with check writing authority for K2 Construction. (Not in genuine dispute as to Karen Kalinowski only).

32. Hawks Holding paid K2 Construction a $363,943.00 deposit under the terms of the construction contract.

33. Hawks Holdings paid all draw requests K2 Construction sent to Hawks Holdings.

34. The draw requests K2 Construction sent to Hawks Holdings included amounts that were owed to subcontractors who had provided labor and materials on the Project.

35. Some of the funds that Hawks Holding paid to K2 Construction were not used to pay the subcontractors who had provided labor and material on the Project.

36. Karen Kalinowski made no effort to ensure that funds Hawks Holdings paid to K2 Construction were used to pay subcontractors who supplied labor and materials for the Project. (Not in genuine dispute as to Karen Kalinowski only).

37. K2 Construction did not complete the Project for Hawks Holdings.

38. At the time K2 Construction stopped work on the Project, Hawks Holdings had paid to K2 Construction a total of $1,458,162.19 on the Contract.[4]

---

09-1131; Docket No. 39), admits that he was "directly involved in deciding which K2 Construction Company, LLC subcontractors and/or material suppliers received payment for the work they performed and the materials they supplied in connection with the construction of the residences" on the lots owned by Hawks Holdings. A fact is subject to genuine dispute when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). Here, Mr. Kalinowski's affidavit is insufficient to raise a genuine issue of material fact in light of his admissions to the contrary contained in his deposition testimony and discovery responses.

[4]Karen Kalinowski admits that this fact is undisputed. William Kalinowski stated that he is without sufficient information to determine whether this fact is undisputed and, and therefore, denies this fact. *See* Defendant's Memorandum of Points and Authorities in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Counter-Motion for Partial Summary Judgment (Adv. Proc. No.

39. Subcontractors and materials suppliers of K2 Construction recorded mechanics liens against the Property in the amount of $586,863.47.[5]

## DISCUSSION

Both parties seek partial summary judgment on Hawks Holding's non-dischargeability claims under 11 U.S.C. § 523(a)(4). That section provides, in relevant part:

> A discharge under section 727 . . . of this title does not discharge and individual debtor from any debt –
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4).[6]

To prevail under this section, a creditor must demonstrate 1) the existence of a fiduciary relationship between the debtor-defendant and the creditor; and 2) a defalcation committed by the debtor-defendant during the course of the fiduciary relationship.[7] The existence of a fiduciary relationship is a "threshold issue to the determination of dischargeability under 11 U.S.C. § 523(a)(4)." *Foxworth Gailbraith Lumber Co. v. Manelos (In re Manelos),* 337 B.R.

---

09-1131; Docket No. 45) ("William Kalinowski's Response"). However, William Kalinowski has not offered any evidence in defense of Hawks Holdings' motion for summary judgment to contest this fact. Consequently, for purposes of summary judgment, this fact is not in genuine dispute.

[5]Karen Kalinowski admits that this fact is undisputed. William Kalinowski stated that he is without sufficient information to determine whether the amount of the mechanics liens is undisputed and and, therefore, denies this fact. *See* William Kalinowski's Response (Adv. Proc. No. 09-1131; Docket No. 45). However, William Kalinowski admits that liens were filed against the Property, and has not offered any evidence in defense of Hawks Holdings' motion for summary judgment to contest this fact. Consequently, for purposes of summary judgment, this fact, including the amount of the mechanic's liens filed against the Property, is not in genuine dispute.

[6] Hawks Holdings has not alleged claims for embezzlement or larceny against Defendant Karen Kalinowski as part of its non-dischargeability claim under 11 U.S.C. § 523(a)(4). *See* First Amended Complaint Objecting to Discharge and Dischargeability (Adv. Proc. No. 09-1123S, Docket No. 2). Hawks Holdings has included an allegation of embezzlement as part of its claim against Defendant William Kalinowski. *See* Complaint Objecting to Discharge and Dischargeability (Adv. Proc. No. 09-1131J, Docket No. 1). However, Hawks Holdings' Motion for Partial Summary Judgment against William Kalinowski is based solely on its claim that William Kalinowski was acting in a fiduciary capacity. *See* Adv. Proc. No. 09-1131J, Docket Nos. 38 and 39. Conversely, William Kalinowski's cross-motion for partial summary judgment is premised on his claim that he did not owe Hawks Holdings a fiduciary duty. *See* Adv. Proc. No. 09-1131J, Docket Nos. 45 and 46. Accordingly, the Court will limit its analysis to the fraud or defalcation while acting in a fiduciary capacity prong of 11 U.S.C. § 523(a)(4).

[7] *See Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996)(stating that, under § 523(a)(4), the plaintiff must establish "a fiduciary relationship . . . and fraud or defalcation committed . . . in the course of that fiduciary relationship."); *Storie,* 216 B.R. at 286 (same).

-10-

409, 412-13 (Bankr.D.N.M. 2006)(citing *Antlers Roof Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997)(remaining citation omitted).

Under applicable Tenth Circuit precedent, the fiduciary duty under 11 U.S.C. § 523(a)(4) is extremely narrow,[8] only arises when there is an express or technical trust,[9] and must exist prior to and not as a result of the wrongdoing.[10] Whether a fiduciary duty exists under 11 U.S.C. § 523(a)(4) is a question of federal law, but state law is relevant to the determination of whether a trust relationship exists.[11] A technical trust may arise as a result of a statute.[12]

Hawks Holding bases its non-dischargeability claims against Karen Kalinowski and William Kalinowski for defalcation while acting in a fiduciary capacity on a statutory provision contained in the New Mexico Construction Industries Licensing Act, N.M.S.A. 1978 §§ 60-13-1 thru 60-13-59. The New Mexico statute at issue provides, in relevant part:

> Any license issued by the division shall be revoked or suspended by the commission for any of the following causes:
>> (A) if the licensee or qualifying party of the licensee willfully or by reason of incompetence violates any provision of the Construction Industries Licensing Act [60-13-1 NMSA 1978] or any rule or regulation adopted pursuant to that act by the division;
>> . . . .

---

[8] *See Holaday v. Seay (In re Seay)*, 215 B.R. 780, 786 (10th Cir. BAP 1997)(noting that the Tenth Circuit in *Young* interpreted the phrase "fiduciary capacity" narrowly.); *Duncan v. Neal (In re Neal)*, 324 B.R. 365, 370 (Bankr.W.D.Okla. 2005), *aff'd*, 342 B.R. 384 (10th Cir. BAP 2006)("The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under this section."). *See also Baines*, 337 B.R. at 400 (stating that "[t]he fiduciary duty contemplated by 11 U.S.C. § 523(a)(4) is very narrow.")(citations omitted).

[9] *Allen v. Romero*, 535 F.2d 618, 621 (10th Cir. 1976)("[T]he exception under § 17(a)(4) [the predecessor under the former Bankruptcy Act to § 523(a)(4)] applies only to technical trusts and not those which the law implies from contract.")(citation omitted). *See also, In re Talcott*, 29 B.R. 874, 878 (Bankr.D.Kan. 1983)(stating that the fiduciary relationship under § 523(a)(4) arises only from a "pre-existing express or technical trust, not [from] implied or constructive trusts.")(citation omitted).

[10] *See Allen v. Romero*, 535 F.2d at 621 (stating that "the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy.")(citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). *See also, Baines*, 337 B.R. 392 at 401 ("the trust cannot arise as a result of the wrongdoing.")(citation omitted)

[11] *Storie*, 216 B.R. at 370; *Young*, 91 F.3d at 1371.

[12] *See Neal*, 324 B.R. at 370 (explaining that "[t]rusts imposed by state statutes are technical trusts, which may lead to the existence of a fiduciary relationship."). *See also, In re Woods*, 284 B.R. 282, 288 (D.Colo. 2001)(noting that "[a] technical trust may arise as a result of defined obligations imposed upon the debtor by state or federal statute.")(citing *Allen v. Romero*; *Employers Workers' Compensation Ass'n v. Kelley (In re Kelley)*, 215 B.R. 468, 473 (10th Cir. BAP 1997)(acknowledging that trusts imposed by state statutes can satisfy § 523(a)(4)).

(F) conversion of funds or property received for prosecution or completion of a specific contract or for a specified purpose in the prosecution or completion of any contract, obligation or purpose, as determined by a court of competent jurisdiction[.]

N.M.S.A. 1978 § 60-13-23

In *Allen v. Romero,* 535 F.2d 618 (10th Cir. 1976), the Tenth Circuit held that the predecessor to this statute imposed a technical trust sufficient to support a non-dischargeability claim under § 17(a)(4) of the Bankruptcy Act, the predecessor to 11 U.S.C. § 523(a)(4). The Tenth Circuit noted that "[t]he Supreme Court of New Mexico has stated that the purpose of the [Construction Industries Licensing] Act is to provide 'a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors.'" *Allen v. Romero,* 535 F.2d at 621 (quoting *Peck v. Ives,* 84 N.M. 62, 499 P.2d 684 (1972)). The Tenth Circuit had little trouble finding that the New Mexico statute "clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." *Id.* Further, because the debtor's obligation not to divert funds arose under the statute, the Tenth Circuit found that the fiduciary capacity was imposed by law and not implied by law as a result of the wrongdoing. *Id. Allen v. Romero* remains controlling precedent within this circuit.[13]

The fact that K2 Construction is a licensed contractor is undisputed.[14] Further, both Karen Kalinowski and William Kalinowski concede that K2 Construction owed Hawks Holding

---

[13] *See Baines,* 337 B.R. at 403 (construing the statute after the legislature changed the word "diversion" to "conversion," finding that "the legislature did not intend to abrogate the holding of *Allen v. Romero* when it changed the language of the statute" and concluding that *"Allen v. Romero* remains controlling law within this Circuit, and still applies to the New Mexico Statute at issue."). Karen Kalinowski's attempt to distinguish several of the cases cited by Hawks Holding by noting that none of the state statutes at issue in those cases contain language identical to the language in the New Mexico statute at issue here is unavailing. Controlling precedent establishes that the New Mexico statute at issue in this case imposes a technical trust sufficient for purposes of 11 U.S.C. §523(a)(4).

[14] Under Title 14 - Housing and Construction, Chapter 6, Construction Industries Licensing N.M.A.C., § 14.6.3.8(A)(1), "[a]ny person engaged in contracting in the State of New Mexico must be validly licensed pursuant to the Construction Industries Licensing Act (Act), NMSA 1978, Section 60-13-1 et seq., and the New Mexico Administrative Code, Title 14." Contractor licenses issued by the Construction Industries Licensing Division ("CID") "are issued only to qualified business entities which employ or are owned by one or more qualifying parties validly certified by CID to perform the classification of contracting in which the licensee intends to engage." Title 14, N.M.A.C. § 14.6.3.8(A)(3)(a). Often the licensee and the qualifying party are the same person; however,

-12-

a fiduciary duty under N.M.S.A. 1978 § 60-13-23.[15]  Defendants primarily base their argument

that neither Karen Kalinowski nor William Kalinowski was acting in a fiduciary capacity on the

fact that neither was the licensee nor the qualifying party for K2 Construction. Consequently,

they assert that the statute at issue does not impose a fiduciary duty on them sufficient for

purposes of 11 U.S.C. § 523(a)(4).  The Court will consider each Defendant's fiduciary capacity

separately.

<u>Whether Karen Kalinowski was acting in a fiduciary capacity</u>

Cases examining the New Mexico statute at issue have imposed liability on an individual

debtor when the contracting party was that individual's corporation.  For example, in *Allen v.

Romero* the debtor's corporation, DeLeon Construction Company, Inc., entered into the contract

with the creditor for the construction of three four-plexes.  *Allen v. Romero,* 535 F.2d at 620.

Although the issue of whether the debtor could be held personally liable for the corporation's

breach of its fiduciary duty to the creditor did not expressly arise in *Allen v. Romero*, the Tenth

Circuit did, in fact, impose liability on Mr. Romero individually and found that the debt was non-

dischargeable.

In *Baines,* the debtors' corporation, Building Unlimited by Baines, Inc., entered into the

construction contract with the plaintiffs.  337 B.R. at 406.  Nevertheless, the bankruptcy court

---

because qualifying party certificates can only be issued to individuals (*see* Title 14, N.M.A.C.
§14.6.3.8(E)(providing that qualifying party certificates issued by the CID "are issued only to individuals who are
eighteen (18) years of age or older")), a license issued to a business entity such as a corporation or limited liability
company necessarily will have an individual serve as its qualifying party.

[15]*See* Defendant's [Karen Kalinowski's] Memorandum of Points and Authorities in Support of Defendant's
Response to Plaintiff's Motion for Partial Summary Judgment & Defendant's Counter Motion for Partial Summary
Judgment, p. 7 ("Defendant does not dispute Plaintiff's Claim that K2 Construction owed Plaintiff a fiduciary duty
with respect to funds advanced by Plaintiff under the Construction Contract pursuant to the New Mexico
Construction Industries Licensing Act.")(Adv. No. 09-1123, Docket No. 33); Defendant's [William Kalinowski's]
Memorandum of Points and Authorities in Support of Defendant's Response to Plaintiff's Motion for Partial
Summary Judgment and in Support of Defendant's Counter-Motion for Partial Summary Judgment, pp. 8 – 9
("[T]he Defendant does not dispute that at all times relevant to the present litigation, K2 Construction, a licensed
New Mexico contractor, owed a fiduciary duty to Plaintiff  pursuant to NMSA 1978 § 60-13-23.")(Adv. No. 09-
1131, Docket No. 45).

found that Robert Baines could be held personally liable and that liability was non-dischargeable under 11 U.S.C. § 523(a)(4). *Id.* The bankruptcy court reasoned that Robert Baines was charged with carrying out the fiduciary duties imposed by N.M.S.A. 1978 § 63-13-23(F) because he was the qualifying party for Building Unlimited, and, further, that because he was the president and majority shareholder of Building Unlimited, it was appropriate to impose personal liability on him in accordance with 11 U.S.C. § 523(a)(4). *Id.*

In support of Karen Kalinowski's argument that she cannot be a fiduciary within the meaning of 11 U.S.C. § 523(a)(4), she focuses on the fact that in *Baines,* the defendant-husband was the qualifying party for his corporation, while the defendant-wife was not. Karen Kalinowski relies on the following language contained in *Baines*:

> The statute upon which Plaintiffs rely to create a technical trust and a consequent fiduciary duty within the meaning of 11 U.S.C. § 523(a)(4) applies to the 'licensee or qualifying party of the licensee." N.M.S.A. 1978 § 60-13-23(A) (Repl. Pam. 1997). It is undisputed that [debtors' corporation] is the licensee and [defendant-husband] is the qualifying party for the licensee. Because [defendant-wife] is neither the licensee nor the qualifying party, [defendant-wife] is not a fiduciary under the New Mexico statute. N.M.S.A. 1978 § 60-13-23(A) (Repl. Pamp. 1997)("if the *licensee* or *qualifying party . . .*")(emphasis added). [Defendant-wife] is, therefore, entitled to judgment as a matter of law on Plaintiffs' claim for non-dischargeability against [defendant-wife] pursuant to 11 U.S.C. § 523(a)(4).

*Baines,* 337 B.R. at 406-07.

Based on this language Karen Kalinowski reasons that because she is neither the licensee nor the qualifying party, it necessarily follows that she cannot be held personally liable for any alleged defalcation committed by K2 Construction. The Court finds Karen Kalinowski's reading of the *Baines* opinion too narrow, and disagrees that non-dischargeability under 11 U.S.C. § 523(a)(4) premised upon the New Mexico Construction Industries Licensing statute can *only*

-14-

arise when the debtor is the licensee or qualifying party.[16]  Such a reading of the statute would

enable an otherwise responsible party to escape liability simply by ensuring that he or she is

neither the qualifying party nor the licensee.   Here, the licensee, K2 Construction, is an artificial

business entity.  The qualifying party for K2 Construction is an individual who is not a defendant

in these adversary proceedings.  The question is which individual or individuals other than the

qualifying party, if any, should be held responsible under 11 U.S.C. § 523(a)(4) for ensuring that

K2 Construction discharges its fiduciary duty imposed under N.M.S.A. § 60-13-23.

Several courts have imposed non-dischargeable personal liability upon an individual

debtor under 11 U.S.C. § 523(a)(4), or its predecessor, §17(a)(4), when the fiduciary duty was

owed by a corporation.[17]  A corporate officer charged with carrying out the fiduciary duty of the

corporation can be personally responsible for a breach of that fiduciary duty by the corporation.[18]

---

[16] In *Baines,* the evidence before the court was insufficient to establish that the defendant-wife participated in the day to day activities of the business, was involved in the execution or performance of the construction contract in question, or took an active role in any of the activities of which the plaintiffs complained.  *Baines,* 337 B.R. at 408.

[17] *See, e.g., Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121 (6th Cir. 1985)(personal liability imposed on debtor-president of insurance agency for agency's defalcation while acting in fiduciary capacity under Michigan statute); *KGB International, Inc. v. Watford (In re Watford),* 374 B.R. 184 (Bankr.M.D.N.C. 2007)(debt was non-dischargeable under 11 U.S.C. § 523(a)(4) as to debtor who was the owner and operator and handled the day-to-day operations of the company for breach of technical trust imposed under Perishable Agricultural Commodities Act); *Fowler & Peth, Inc. v. Regan (In re Regan),* 311 B.R. 271 (Bankr.D.Colo. 2004), *aff'd,* 2007 WL 1346576 (D.Colo. 2007)(debt non-dischargeable under 11 U.S.C. § 523(a)(4) as to debtors who were sole owners, operators, and directors of corporation and who participated in corporation's defalcation of funds subject to technical trust imposed under Colorado Mechanic's Lien Trust Fund Statute); *Global Express Money Orders, Inc. v. Davis (In re Davis),* 262 B.R. 673 (Bankr.E.D.Va. 2001)(debtor who was corporate fiduciary's major stockholder, president, and director, and who was "well aware" that the trust funds were comingled with operating funds was acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4)); *Woodworking Enterprises, Inc. v. Baird (In re Baird),* 114 B.R. 198 (9th Cir. BAP 1990)(debtor who was officer of corporate contractor could be held personally liable under 11 U.S.C. § 523(a)(4) for breach of trust imposed under Arizona statute providing that funds paid to a contractor are deemed to be held in trust for the benefit of persons furnishing labor and materials to the project); *Anderson v. Currin (In re Currin),* 55 B.R. 928 (Bankr.D.Colo. 1985)(officer and director of broker who either  knew or should have known of the misappropriated funds was individually liable for the corporation's defalcation while acting in fiduciary capacity under the Colorado real estate broker's licensing statute); *Sun Life Ins. Co. of America v. Koszuth (In re Koszuth),*43 B.R. 104 (Bankr.M.D.Fla. 1984) (debtor charged with duty of a fiduciary for his corporation under contractual agreement that established a trust relationship between the creditor and the corporation);

[18] *See Interstate Agency,* 760 F.2d at 125 (stating that "[i]t is well established that a corporate officer or agent is personally liable for torts committed by him *even though he was acting for the benefit of the corporation.*")(emphasis in original)(citations omitted); *Currin,* 55 B.R. at 935 (noting that "where the corporation itself is a 'trustee' holding specific funds for the benefit of a particular creditor, a corporate officer who knowingly

While it is correct that liability cannot be imposed based *solely* on an individual's status as a corporate officer,[19] a corporate officer or managing member of a limited liability company[20] can act in a fiduciary capacity and be held liable for a non-dischargeable debt when that person is charged with carrying out the fiduciary obligations of the artificial business entity. Bankruptcy Code Section 523(a)(4) does not require that the debtor owe the fiduciary duty to the creditor, only that the debtor act in a "fiduciary capacity." As explained by the Court in *Koszuth,*

> A corporation acts only through its officers or employees. When a corporation as an entity is placed in a fiduciary capacity it is the corporate officer who is charged with performing the fiduciary duties and living up to the terms of the agency. If the fiduciary relationship is not imposed upon the corporate officer charged with maintaining the fiduciary relationship, then § 523(a)(4) could be rendered meaningless in cases where the fiduciary relationship is established between a creditor and a corporate fiduciary only.

*Koszuth,*43 B.R. at 108.

Karen Kalinowski argues in the alternative that even if a corporate officer charged with carrying out the fiduciary duty of the corporation could be held to have acted in a fiduciary capacity under 11 U.S.C. § 523(a)(4), she did not so act. In defense of Hawks Holdings' motion

---

causes the misappropriation of the trust property is personally liable for the breach of trust committed by the corporation, even if the officer did not personally profit from the transaction."). *See also, Davis,* 262 B.R. at 683 (noting that [t]he director or officer who negligently causes the breach of trust is 'personally liable to the beneficiaries for the loss.'")(quoting 4 *Scott on Trusts* § 326.3).

[19] *See Bonito Land & Livestock, Inc. v. Green (In re Green),* 386 B.R. 865, 870 (Bankr.D.N.M. 2008)(rejecting plaintiff's contention that New Mexico statutes concerning corporate governance are sufficient to establish a technical trust within the meaning of 11 U.S.C. § 523(a)(4), reasoning that although "the statutes arguably recognize a generalized fiduciary duty of officers and directors to the corporation, they do not spell out any specific fiduciary duties that officers or directors must exercise over any specific assets."); *In re Tinkler,* 311 B.R. 869, 874-75 (Bankr.D.Colo. 2004)(stating that "a corporate officer or shareholder, by virtue of that status alone is not liable for the acts or debts of the corporation . . . even when the officer controls the operations of the corporation or is the sole shareholder of the corporation.")(citations omitted).

[20] *See* New Mexico Limited Liability Company Act, N.M.S.A. 1978 §§ 53-19-1 to 53-19-13 (providing that "the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company . . . . A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability. Nothing in this section shall be construed to immunize and person from liability for the consequences of his own acts or omissions for which he otherwise may be liable."); *Brophy v. Ament,* 2008 WL 4821610, *1 (D.N.M. July 9, 2008)(unreported)(stating that the New Mexico Limited Liability Company Act "and supporting case law indicate than an agent of a corporation, or a member of a limited liability company, may be held liable for the consequences of his or her own acts or omissions, including tortious acts . . .").

-16-

for partial summary judgment, Karen Kalinowski offered an affidavit which included the following averments: 1) "[a]s an employee of K2 Construction Company, LLC, my duties were limited to the aspect of design, and I was rarely consulted regarding financial decisions, including decisions regarding the payment of vendors and subcontractors" and 2) "during the years that I was involved in the construction industry, I did not transfer funds or authorize the transfer of funds from K2 Construction Company, LLC to any other entity." [21]  Her supplemental affidavit adds the following averments:

1) I was one of three members of K2 Construction Company, LLC, which was organized in 2007 at the request of Jim McCormick at Century Bank; and

2) Paragraph 3.2 of Article II, "Rights and Duties of Managers" of the Regulations of K2 Construction Company, LLC requires that "[t]he number of Managers of the Company shall be two (2) or more";  and

3) I was a titular manager of K2 Construction Company, LLC, but in fact, I did not manage the company.

Supplemental Affidavit of Karen Kalinowski, ¶¶ 3, 5, and 7. (Docket No. 46).

Such statements do not create a fact issue sufficient to preclude partial summary judgment on the narrow issue of whether Karen Kalinowski was acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4), despite the language in the in the Regulations of K2 Construction Company requiring two managers.  K2 Construction's Organizational Minutes state that the members decided to have only one manager, and named Karen Kalinowski as the sole manager.[22]

Karen Kalinowski's averments that that William Kalinowski, in fact, ran K2 Construction, that she was merely the titular manager, and that she was "rarely consulted"

---

[21] *See* Affidavit of Karen Dieter Kalinowski in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment, ¶¶ 6 and 7, attached to Defendant's Memorandum of Points and Authorities in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment & Defendant's Counter Motion for partial Summary Judgment. (Adv. No. 09-1123, Docket No. 33).

[22] *See* Minutes of Organizational Meeting of K2 Construction Company, LLC, attached as Exhibit C to Plaintiff's Separate Response to Court's Request for Additional Information Concerning the Managing Member(s) of K2 Construction Company, LLC (Docket No. 47).

regarding financial decisions, likewise do not create a genuine issue of material fact. Even if William Kalinowski may have, in fact, taken the principal managerial role in running K2 Construction, the undisputed facts establish that Karen Kalinowski was the sole *de jure* manager of K2 Construction. Karen Kalinowski alone was charged by K2 Construction's Operating Agreement and Regulations as having the managerial responsibilities for K2 Construction's business and affairs, including K2 Construction's discharge of its fiduciary duties under the New Mexico Construction Industries Licensing Act, regardless of whether she actually carried out those responsibilities. Allowing William Kalinowski to manage K2 Construction's business operations and limiting her participation in financial decisions, thereby in effect delegating her duties to William Kalinowski, did not relieve her of her management duties or absolve her from any responsibility for the company's financial decisions. Further, Karen Kalinowski admitted that she made no effort to ensure that the funds Hawks Holdings paid to K2 Construction were actually used to pay subcontractors and suppliers for Hawks Holdings' Project, that she and William Kalinowski consulted about K2 Construction's management decisions, and that she was involved in K2 Construction's day-to-day affairs.

Based on Karen Kalinowski's authority and ultimate responsibility as sole manager to conduct K2 Construction's business and affairs coupled with the fact that K2 Construction did not have any officers, her participation in management decisions and day-to-day operations of K2 Construction, her 51% ownership interest in K2 Construction that gave her a controlling interest, her delegation of authority to William Kalinowski without any meaningful supervision or controls in place, her execution of the construction contract as K2 Construction's manager, and her sole authority to write checks on K2 Construction's behalf, the Court finds that Karen Kalinowski was charged by K2 Construction with carrying out its fiduciary duties to Hawks

-18-

Holding and as such she was acting in a "fiduciary capacity" for purposes of 11 U.S.C. § 523(a)(4).[23] The fact that she was not a personal guarantor of any debt K2 Construction may owe to Hawks Holdings does not alter this result.

<u>Whether William Kalinowski was acting in a fiduciary capacity</u>

As discussed above, where a business entity such as a corporation or limited liability company owes a fiduciary duty, the individuals charged with carrying out the fiduciary duty on behalf of the business entity can act in a fiduciary capacity sufficient to fall within the parameters of 11 U.S.C. § 523(a)(4). William Kalinowski points out that he did not have an ownership interest in K2 Construction. Nor was he a member or officer of K2 Construction. Further, because William Kalinowski was neither the licensee nor the qualifying party for K2 Construction's construction license, William Kalinowski argues that the New Mexico statute which imposes a technical trust and consequent duties of a trustee upon the licensee and qualifying party does not impose a fiduciary duty upon him in his individual capacity.

Hawks Holdings characterizes William Kalinowski's role in K2 Construction as "de facto" manager. Hawks Holdings' argument focuses on William Kalinowski's actual management of the day-to-day operation of K2 Construction and his active role as the primary decision maker for K2 Construction, including his role as the principal party deciding which subcontractors would be paid, to assert that William Kalinowski was, in fact, acting in a "fiduciary capacity" sufficient for purposes of 11 U.S.C. § 523(a)(4). This Court agrees.

---

[23] *Cf. Interstate Agency,* 760 F.2d at 125 (finding that president, large shareholder, and signatory to the agreement that created the trust relationship established that he had "full knowledge and responsibility for the handling" of the corporation's trust obligations); *Cf. Western Union Financial Services, Inc. v. Gray (In re Gray),* Adv. Proc. No. 02-1174 S, slip op. at p. 5 (Bankr.D.N.M. Oct. 14, 2003 - Docket No. 25)(finding that the defendant who guaranteed the corporation's obligations under the agreement that created an express trust and who was also an owner, officer, and director of the corporation should be held liable for any defalcations of the corporation that resulted from the defendant's negligent or reckless delegations of duties to another party).

When an individual undertakes the duties of a trustee with regard to an express or technical trust, he is, in fact acting in a fiduciary capacity with respect to the beneficiaries of that trust.[24] And while it is correct that a debtor is not a fiduciary under 11 U.S.C. § 523(a)(4) simply by virtue of being in the position of agent, *Armendariz v. Galvan (In re Galvan),* 430 B.R. 685, 691 (Bankr.D.N.M. 2009),[25] the Court finds that it is possible, based on a debtor's delegated authority and actions, to conclude that a debtor was acting in a "fiduciary capacity" under 11 U.S.C. § 523(a)(4). As noted in an unreported case decided by the United States District Court for the Northern District of Texas, "[a]lthough an agency relationship is not in and of itself sufficient to satisfy the 'fiduciary capacity' requirement under § 523(a)(4), (citation omitted) . . . it may be transformed into such a relationship where the duties and control exercised by the agent are tantamount to those of a trustee of an express trust." *Pool v. Johnson,* 2002 WL 598447, *4 (N.D.Tex. April 15, 2002)(citing *In re Woodhead,* 172 B.R. 628, 631 (Bankr.D.Neb. 1994)).

Here, the "K2" in K2 Construction stood for Karen [Kalinowski] and Kal [William Kalinowski]. William Kalinowski exercised management and control over the day-to-day activities of K2 Construction under authority delegated to him by Karen Kalinowski. He admitted that he "was the primary person involved in making decisions for K2, but she [Karen Kalinowski] was involved as well."[26] William Kalinowski negotiated K2 Construction's contract with Hawks Holdings, represented to others that he controlled and managed K2 Construction and another limited liability company called Barranca Builders, LLC, and gave

---

[24] *See White v. White (In re White),* 2005 WL 5154692, * 10 (Bankr.S.D. Fla. Nov. 21 2005)(finding that "it is immaterial whether [debtor] was the actual or express trustee. The requirements of § 523(a)(4) are met if a debtor was acting in a fiduciary capacity with respect to a technical or express trust.").

[25] (citing *In re Kichler,* 226 B.R. 910, 913 (Bankr.D.Kan. 1998)(remaining citations omitted)).

[26] *See* Exhibit C attached to Memorandum of Points and Authorities in Support of Plaintiff's Motion for partial Summary Judgment (Adv. Proc. 09-1131; Docket No. 39), Deposition of William Kalinowski dated June 14, 2010 ("Exhibit C/W. Kalinowski Deposition"), p. 198.

Hawks Holdings "the very real impression that [he] was responsible" for getting the Project built for Hawks Holdings and paid for.[27]  William Kalinowski was directly involved in determining which subcontractors and suppliers of K2 Construction's construction projects for Hawks Holding would be paid.  He was involved in decisions to move money from K2 Construction to a pooled account in the name of another entity called Fourteen Pueblos Construction Company ("Fourteen Pueblos"),[28] and was aware that such fund transfers were being routinely made.[29]  He was the manager of Fourteen Pueblos and other entities.[30]  It was his ordinary practice in the construction industry to transfer money from one entity to another in order to satisfy each entity's financial obligations to its creditors.[31]  These admissions collectively establish that William Kalinowski voluntarily placed himself in a position as an agent of K2 Construction to carry out K2 Construction's fiduciary duties to Hawk's Holdings under the New Mexico Construction Industries Licensing Act.

Consequently, the Court concludes that William Kalinowski was acting in a fiduciary capacity sufficient for purposes of 11 U.S.C. § 523(a)(4).[32]  The fact that the construction contract did not identify a specific trust *res,* assign trust duties, or otherwise constitute an express trust is irrelevant.  Controlling applicable Circuit precedent establishes that the New Mexico Construction Industries Licensing Act imposes a technical trust upon contractors sufficient for

---

[27] *Id.* at p. 148.

[28] *Id.* at p. 192 (acknowledging that he, "was a party to making those decisions [to transfer monies from K2 Construction to Fourteen Pueblos]."

[29] *See* Exhibit E attached to Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment (Adv. Proc. 09-1131;  Docket No. 39), Defendant William Francis Kalinowski's Responses to Plaintiff['s] Requests for Admissions ("Exhibit E/W. Kalinowski's Resp. to RFA"), No. 8.

[30] *See* Exhibit C/W. Kalinowski Deposition, p. 35.

[31] Exhibit E/W. Kalinowski's Resp. to RFA, No. 10.

[32] This conclusion also has support under New Mexico law.  Under applicable New Mexico law, a third party who does not already owe a fiduciary duty can nevertheless be liable for aiding and abetting a breach of fiduciary duty when the "injured party has a fiduciary relationship with the principal tortfeasor, and a third party occupies the role of an accomplice in relation to the principal tortfeasor."  *Rael v. Page,* 147 N.M. 306, 312, 222 P.3d 678, 684 (Ct. App. 2009)(citation omitted).  *See also, GCM, Inc. v. Kentucky Central Life Ins. Co.,* 124 N.M. 186, 191, 947 P.2d 143, 148 (1997)(holding "that New Mexico recognizes tort liability for the aiding and abetting of a breach of fiduciary duty.").

purposes of 11 U.S.C. § 523(a)(4), and the facts not subject to genuine dispute are sufficient to establish that William Kalinowski undertook to carry out K2 Construction's fiduciary duties imposed under the statute.

<u>Whether the facts not in genuine dispute are sufficient to establish a defalcation</u>

Having determined that both Karen Kalinowski and William Kalinowski acted in a fiduciary capacity sufficient for purposes of 11 U.S.C. § 523(a)(4), the Court must next determine whether the facts not in genuine dispute are sufficient to establish that a defalcation occurred during the course of the fiduciary relationship. In *Storie*, the Tenth Circuit Bankruptcy Appellate Panel examined the level of mental culpability required to demonstrate a defalcation within the meaning of 11 U.S.C. § 523(a)(4). After examining various approaches, the *Storie* Court concluded "that 'defalcation' under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty, whether intentional, willful, reckless, or negligent." *Storie,* 216 B.R. at 288. Specific intent to harm the creditor, though sufficient to establish a defalcation under 11 U.S.C. § 523(a)(4), is not required.[33] This approach is consistent with the generally accepted view "that fiduciaries are charged with knowledge of their duties and of applicable law, and that subjective intent to breach a fiduciary duty or law is irrelevant." *Storie,* 216 B.R. at 287 (collecting cases).

---

[33] *See Baines,* 392 B.R. at 404 (stating that, "for a defalcation to occur, the debtor-fiduciary need not have willfully intended the harm.")(citing *Storie,* 216 B.R. at 287 (discussing Judge Learned Hand's decision in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir. 1937)) and stating that "it is generally recognized . . . that 'defalcation' applies to conduct that does not reach the level of fraud embezzlement, misappropriation or larceny . . ."). *See also, Davis,* 262 B.R. at 684 (stating that "[d]efalcation is defined as 'the slightest misconduct, and it need not be intentional conduct; negligence or ignorance may be defalcation.'")(quoting *Bailey v. Sonnier (In re Sonnier),* 157 B.R 976, 984 (E.D.La. 1993), *quoting Morales v. Codias (In re Codias),* 78 B.R. 344, 346 (Bankr.S.D.Fla. .1987)(citation omitted))(remaining citations omitted).

The burden of proof as to the defalcation element of 11 U.S.C. § 523(a)(4) is a shifting one.[34] After first establishing that the debtor is acting in a fiduciary capacity, the creditor objecting to dischargeability must also demonstrate "that its debt has arisen because the debtor-fiduciary has not paid the creditor funds entrusted to it." *Storie,* 216 B.R. at 288 (citing *Young,* 91 F.3d at 371). "[T]he burden then shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties." *Storie,* 216 B.R. at 288 (citations omitted).

Hawks Holdings has sufficiently carried its burden of proof to shift to Defendants the burden of going forward to render an accounting and show that they carried out K2 Construction's fiduciary duties to Hawks Holdings. Facts that are not in genuine dispute establish that 1) Hawks Holdings paid K2 Construction a $363,943.00 deposit under the construction contract;[35] 2) Hawks Holdings paid K2 Construction draw requests submitted to Hawks Holdings by K2 Construction;[36] 3) some of the funds Hawks Holdings paid to K2 Construction were pooled into a single account for various construction companies managed and operated by Karen Kalinowski and William Kalinowski;[37] 4) some of the funds Hawks Holdings paid to K2 Construction were not used to pay subcontractors who provided labor and materials on Hawks Holding's Project with K2 Construction;[38] 5) Hawks Holdings paid K2 Construction a total of $1,458,162.19 under the Contract;[39] and 5) mechanic's liens in the amount of

---

[34] *See, In re Niles,* 106 F.3d 1456, 1462-63 (9th Cir. 1997)(stating that the burden to provide an accounting is placed on the fiduciary once the principal has shown that funds were entrusted to the fiduciary and not paid); *Storie,* 216 B.R. at 288 (finding that the burden shifts to the debtor-fiduciary to provide an accounting to demonstrate compliance with fiduciary duties once creditor meets its burden that the debtor is acting in a fiduciary capacity and that its debt arose because the debtor-fiduciary has not paid the entrusted funds)(citing *Niles,* 105 F.3d at 1461-62)(remaining citation omitted); *Neal,* 324 B.R. at 371(stating that "[o]nce a creditor objecting to the dischargeability of a debt under §523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor has not paid the creditor funds entrusted to him, the burden then shifts to the debtor to render an accounting to show that it complied with its fiduciary duty.")(citing *Storie,* 216 B.R. at 288).

[35] *See* Fact not in genuine dispute No. 32.

[36] *See* Fact not in genuine dispute No. 33.

[37] *See* Fact not subject to genuine dispute No. 26.

[38] *See* Fact not subject to genuine dispute No. 35.

[39] *See* Fact not subject to genuine dispute No. 38.

-23-

$586,863.47 were recorded against the Property.[40]   Karen Kalinowski acknowledges that as *de jure* manager of K2 Construction she allowed William Kalinowski without any meaningful supervision or controls in place to act as *de facto* manager of K2 Construction and make decisions on its behalf, including decisions regarding the use and disposition of K2 Construction's funds. Karen Kalinowski also acknowledges that she was aware that some of the funds Hawks Holdings paid K2 Construction for the Project were transferred to the Fourteen Pueblos pooled account.  William Kalinowski, the manager of Fourteen Pueblos, has admitted that he was involved in decisions to move money from K2 Construction to Fourteen Pueblos, that he was aware of such fund transfers, and that it was his ordinary practice to transfer money from one entity to another to satisfy each entity's financial obligations to its creditors.

For purposes of summary judgment, these facts support the inference that a defalcation occurred.  Hawks Holdings has, therefore, met its initial burden of demonstrating that at least a portion of the funds entrusted to K2 Construction were not paid to suppliers and subcontractors or for labor and materials on the Project as required under the New Mexico Construction Industries Licensing Act.  Consequently, the burden of going forward has shifted to Defendants to account for the funds entrusted to K2 Construction to demonstrate that they carried out K2 Construction's fiduciary duties.   At trial, evidence may, in fact, establish that no defalcation occurred.

Damages

Hawks Holdings asserts that by failing to contest its statement of material facts or the evidence it proffered in support of its damages claim, Defendants have admitted those facts, and

---

[40] *See* Fact not subject to genuine dispute No. 39.

therefore, no accounting by Defendants is necessary.[41]  However, even if Defendants did not

specifically controvert those additional facts, the Court must independently satisfy itself that the

facts are supported by admissible evidence, and that Hawks Holdings is entitled to an award of

damages.[42]

Hawks Holding has proffered affidavit testimony of Howard L. Hawks, its sole managing

member, that when K2 Construction abandoned the Project Hawks Holding had paid K2

Construction $1,458,162.19 of the $3,639,436.00 contract price for the Project, and had made

every payment K2 Construction requested of it.  The affidavit testimony details Hawks

Holding's cost to complete the Project as a result of K2 Construction's failure to perform its

obligations under the construction contract, and the cost to discharge $586,863.47 of liens of

unpaid subcontractors and suppliers.  Hawks Holding computes damages based on the difference

between the cost to complete and to discharge liens and the unpaid balance of the contract price.

On the evidence now before the Court, Hawks Holdings has not established its

entitlement to an award of damages.  There is no evidence before the Court regarding the amount

of funds paid by Hawks Holdings to K2 Construction wrongfully diverted from the Project, nor

to what extent the filing of mechanics' liens against the Project or Hawks Holdings' cost to

complete the Project resulted from diversion of funds.

## CONCLUSION

Based on the foregoing, the Court finds that both Karen Kalinowski and William

Kalinowski were acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).

---

[41] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202(stating that the nonmoving party may not rest upon "mere allegations or denials" of the pleading in order to sufficiently contest a properly supported motion for summary judgment).
[42] *See* Advisory Committee Notes to Fed.R.Civ.P. 56(e)(stating that "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."); *In re Lenard,* 140 B.R. 550, 555 (D. Colo. 1992)(stating that "Rule 56 does not permit the court to grant summary judgment in favor of a plaintiff without analyzing, as a matter of law, he has established the essential elements of his claim.").

Under *Allen v. Romero,* the New Mexico Construction Industries Licensing Act imposed a technical trust that created a fiduciary duty on the part of K2 Construction not to divert funds entrusted to it for purposes other than "for a specified purpose in the prosecution or completion" of the construction Project K2 Construction undertook on behalf of Hawks Holdings pursuant to the Contract. Karen Kalinowski and William Kalinowski acted in a fiduciary capacity with respect to K2 Construction's discharge of its fiduciary duties to Hawks Holdings.

The facts not in genuine dispute demonstrate that at least some of the funds Hawks Holdings entrusted to K2 Construction were pooled into a single account held by a different company, that Hawks Holdings paid K2 Construction more than $1,400,000.00 on the Contract, and that subcontractors and suppliers remained unpaid and filed mechanics' liens in excess of $500,000.00 against the Property. These facts are sufficient to support an inference that a defalcation occurred, shifting the burden of going forward to Defendants to provide an accounting of the funds. The Court, therefore, finds it appropriate to grant, in part, Hawks Holdings' motions for partial summary judgment determining that both Karen Kalinowski and William Kalinowski were acting in a fiduciary capacity, and deny Hawks Holdings' motions for partial summary judgment on the remaining issues. The motions for partial summary judgment filed by Karen Kalinowski and William Kalinowski will also be denied.

Orders consistent with this Memorandum Opinion will be entered.


_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   March 8, 2011

COPY TO:

Christopher M. Grimmer
Donald A. Walcott
Attorneys for Plaintiff
PO Box 9570
Santa Fe, NM  87504

James P. Waldron
Attorney for Plaintiff
1500 Omaha Tower
2120 South 72nd Street
Omaha, NE  68124

George M. Moore
Bonnie Bassan Gandarilla
Attorneys for Defendants
PO Box 7459
Albuquerque, NM 87194